**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DUANE WOMACK, individually and on behalf of all
others similarly situated,

                                 Plaintiff,

v.

EVOL NUTRITION ASSOCIATES, INC., *d/b/a* Red
Dawn Energy, a Georgia Corporation,

                                 Defendant.

                            6:21-cv-00332 (BKS/TWD)

_____

**Appearances:**

*For Plaintiff:*
Trenton R. Kashima
Sommers Schwartz, P.C.
402 West Broadway, Ste. 1760
San Diego, CA 92101

Jan M. Smolak
Michaels & Smolak, P.C.
17 East Genesee St., Ste. 401
Auburn, NY 13021

*For Defendant:*
Phillip A. Oswald
Rupp Baase Pfalzgraf Cunningham LLC
227 Washington St., Ste. 1C
Saratoga Springs, NY 12866

Kevin J. Federation
Rupp Baase Pfalzgraf Cunningham LLC
400 Powers Bldg.
16 West Main St.
Rochester, NY 14614

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

Plaintiff Duane Womack brings this proposed class action against Defendant EVOL Nutrition Associates, Inc. seeking damages, restitution, injunctive relief, costs, and attorney's fees for Defendant's allegedly unfair and deceptive trade practices in the marketing, distribution, and retail of its "Sleep Walker" and "Red Dawn" Products (the "Products"). (Dkt. No. 1). Plaintiff asserts his claim on behalf of himself and others similarly situated who purchased the Products, alleging violation of the Unfair and Deceptive Trade Practices Act, New York General Business Law ("NYGBL") § 349 *et. seq.* (*Id.*).

Defendant moves to dismiss the complaint under Rules 4(m), 12(b)(5), (6), and 60(b) of the Federal Rules of Civil Procedure for failure to timely serve the summons and complaint without good cause, and failure to state a claim on which relief can be granted. (Dkt. No. 17). Plaintiff opposes Defendant's motion. (Dkt. No. 18). For the following reasons, Defendant's motion to dismiss is granted.

## II.    COMPLAINT[1]

### A.     "Sleep Walker" and "Red Dawn" Products

Defendant manufactures, markets, and retails the Products as "dietary supplements that provide extra energy and enhance[] the consumer's mood." (Dkt. No. 1, ¶ 1). The Products are sold "in capsule form, as two ounce (60ml) liquid single-serving 'shots,' or in larger four to sixteen ounce multi-serving bottles," and are offered in several flavors. (*Id.* ¶ 9). Defendant

---

[1] The facts are drawn from the Complaint. The Court assumes that all well-pleaded facts are true and draws all reasonable inferences in Plaintiff's favor. *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

markets the Products as energy drinks, such that they compete with coffee and other caffeinated drinks. (*Id.* ¶ 1). Defendant "markets these Products as safe and effective." (*Id.* ¶ 10).



However, the Products contain "Beta-phenyl-gamma-aminobutyric acid," otherwise known as "Phenibut" or "GABA." (*Id.* ¶ 2). Phenibut is a "drug" that works by "mimicking the brain chemical called gamma-aminobutyric acid, which is a calming neurotransmitter," and is "used to treat insomnia, depression, stuttering, vestibular disorder, irregular heartbeat, and post-traumatic stress disorder in Russia, Ukraine, Belarus and Latvia." (*Id.* ¶¶ 10, 11). "There is no good scientific evidence . . . to support Phenibut's treatment of these conditions." (*Id.* ¶ 10). Phenibut instead "seems to be used primarily as a recreational drug." (*Id.*).

Phenibut has many side effects. It can cause "dizziness, nausea, poor balance, and fatigue" when taken orally, and, when taken in large doses, it can cause "trouble breathing, feelings of electric shocks in the arms and legs, and unconsciousness." (*Id.* ¶ 11). Consumers of Phenibut report feeling "unwell" after a single serving, and feeling "uneas[iness], nausea, and other hangover like symptoms for up to twenty-four hours" after consumption. (*Id.* ¶ 22). Long-

3

term, Phenibut can cause "depression and fatigue." (*Id.* ¶ 12). It can also cause dependence, even after one use. (*Id.* ¶ 11). "People who use Phenibut regularly, and then stop taking it, may experience withdrawal symptoms," including "decreased appetite, nausea, muscle aches, anxiety, agitation, trouble sleeping, and seizures." (*Id.* ¶ 12). There is "little scientific research" about what constitutes a safe dosage of Phenibut for adults, and "Phenibut has been banned in Hungary, Lithuania, Italy, and Australia" due to concerns about withdrawal and overdose. (*Id.* ¶¶ 12, 14).

Phenibut is not approved for use in the United States. (*Id.* at ¶ 13). On April 10, 2019, the Food and Drug Administration ("FDA") sent Defendant a warning letter, noting that Phenibut is not a dietary ingredient under the Federal Food, Drug and Cosmetic Act ("FDCA"), and therefore that "[d]eclaring phenibut in [its] product labeling as a dietary ingredient cause[d its] products to be misbranded under [the FDCA] in that the labeling is false or misleading in any particular." (*Id.* ¶ 20). Phenibut is not "generally recognized as safe" ("GRAS"), and therefore requires "premarket approval," which Defendant has not sought, rendering the Products misbranded "under federal and New York State law." (*Id.* ¶ 20). The Products therefore "may not be sold in the United States." (*Id.* ¶ 21). Yet after receiving the FDA warning letter, "Defendant continued to market the Product[s] with Phenibut." (*Id.* ¶ 42).

Defendant markets the Products to consumers without disclosing the dangers of Phenibut or the fact that Phenibut is "not approved for use in the United States." (*Id.* ¶ 13). The Products' labels indicate that they contain a "Proprietary Blend" or "Proprietary Focus/Mood Blend." (*Id.* ¶ 2). The labels make claims including "increase focus & elevate mood," "Stress & Anxiety Relief," "Better Mileage™ for Brain and Body," and "EXTRA ENERGY! EXTRA MOOD ENHANCEMENT!" (*Id.* ¶ 9). Defendant "mislead consumers about the immediate health

4

dangers and risk of addiction caused by Phenibut in the Products" by marketing them as energy drinks and failing to adequately warn consumers of the dangers of Phenibut, which "Defendant knew or should have known might result from consuming the Products." (*Id.* ¶ 23).

### B.    Plaintiff's Purchase and Use of the Products

Plaintiff Duane Womack, a resident of Rome, New York and citizen of New York, purchased several of Defendant's Sleep Walker Products "in the last four years, including at a Speedway store located in New York on or about June 2020." (*Id.* at ¶ 7). He believed that the Products would be safe and would provide him with an energy boost. (*Id.*). Plaintiff did not know that the Products "contained a dangerous and unapproved ingredient" or that they were "misbranded and adulterated dietary supplements." (*Id.* ¶¶ 4, 26). If he had known, he would not have purchased the Products, "or would have paid less." (*Id.* ¶ 4). After consuming the Products, Plaintiff experienced side effects including "dizziness, nausea, or fatigue for over twelve hours." (*Id.* ¶ 7). The side effects Plaintiff experienced "were so pronounced, that Plaintiff did not finish the remaining Products that he purchased." (*Id.*).

Plaintiff proposes to bring this action on behalf of himself and the following class under Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3):

> All persons in state of New York and who purchased the Sleep Walker (sold in both liquid and capsule forms) and Red Dawn Liquid Products between March 23, 2018 and the present.

(*Id.* ¶ 28).

### III.    MOTION TO DISMISS—Fed. R. Civ. P. 60(b), 12(b)(5)

Defendant seeks dismissal under Rules 60(b), and 12(b)(5) on the grounds that 1) the Magistrate Judge improperly extended the service deadline, and 2) Plaintiff failed to timely serve Defendant before either the initial or the extended deadline for service. (Dkt. No. 17-3, at 8). The Court finds that Plaintiff has properly served Defendant.

A.     **Efforts to Effect Service**

Plaintiff filed the complaint on March 24, 2021, and therefore, the original deadline to effectuate service pursuant to Fed. R. Civ. P. 4(c)(1) and 4(m) was June 22, 2021 (90 days after the filing of the complaint). (*See* Dkt. No. 1; Dkt. No. 17-3, at 11). On June 14, 2021, United States Magistrate Judge Therese Wiley Dancks issued a Text Order noting that Defendant had not yet appeared and directing Plaintiff to file a status report "re: status of service on defendant and any communications plaintiff has had with defendant." (Dkt. No. 5). Plaintiff submitted a status report to the Court on June 18, 2021, indicating that a claims adjuster for Admiral Insurance, Defendant's insurance agency, had emailed Plaintiff's counsel on April 19, 2021, stating that the agency had been notified that "defendant had been served with a summons and complaint" and requesting a "30-day extension to file an Answer," which Plaintiff's counsel granted. (Dkt. No. 7).[2] The status report further indicated that when Plaintiff's counsel contacted the claims adjuster on June 14, 2021, counsel learned that Admiral Insurance had denied coverage and were not defending or appearing on the behalf of Defendant. (*Id.*). The status report stated that Plaintiff's counsel was "going to reach out to the defendant to determine whether they would be responding." (*Id.*).

The Magistrate Judge directed Plaintiff to file proof of service of the summons and complaint on Defendant by July 2, 2021. (Dkt. No. 8). Plaintiff submitted a status report to the Court on July 2, 2021 indicating that Plaintiff's counsel had attempted to contact Defendant but had received no response. (Dkt. No. 9). Plaintiff's counsel further reported that "even though [they knew] that [Defendant was] served with the summons and complaint," they had been

---

[2] On April 19 or 20, 2021, Defendant "received a package of documents in the mail from a legal services company in New York State informing [it] of the lawsuit." (Dkt. No. 17-2, at 2). This package appears to contain a copy of the summons. (*Id.* at 8, 10).

unable to obtain an affidavit of service from the process servers and had decided to re-serve

Defendant, which "should be completed within the next two weeks." (*Id.*). On July 6, 2021, the

Magistrate Judge issued a text order construing this status report as a "request to extend the time

to serve defendant since the complaint has not been served within 60 days of the issuance of the

summons as required by General Order 25 . . . and Local Rule 4.1(b)," and extended the time to

complete service of process until July 23, 2021. (Dkt. No. 10). Plaintiff submitted a status report

on July 23, 2021, attaching proofs of service of summons. (Dkt. Nos. 11, 11-1 and 11-3). In the

status report, Plaintiff indicated that he had attempted to serve Defendant's agent for service of

process, Jeremy Nickels, "between June 23 and 24, 2021, but was unsuccessful." (Dkt. No. 11, at

2). The proof of service reflects that Plaintiff served the Georgia Secretary of State on July 20,

2021, and personally served a copy of the summons and complaint on Jeremy Nickels on July

21, 2021. (Dkt. Nos. 11-1, 11-3).

### B.    Rule 60(b)

Defendant first argues that the Magistrate Judge improperly extended the time to

effectuate service. (Dkt. No. 17-3, at 9–10). Specifically, Defendant argues that the Magistrate

Judge's July 6, 2021 Text Order extending the service deadline to July 23, 2021, is void and

"must be vacated" under Rule 60(b)(4) for lack of personal jurisdiction, because Defendant had

not yet been served at the time it was issued. (*Id.* at 8–10). Defendant's argument concerning

Rule 60(b) is misplaced.

Rule 60(b) provides in relevant part: "[T]he court may relieve a party . . . from a final

judgment, order, or proceeding for the following reason[]:  . . . (4) the judgment is void."

However, no *judgment* has been entered in this case, and the cases Defendant cites in support of

its argument concern motions to vacate *default judgments* on the ground that the court lacked

personal jurisdiction over the defendants because service of process was defective, and thus

provide no authority for vacating an order extending a service deadline. *See Nature's First, Inc. v. Nature's First Law, Inc.*, 436 F. Supp. 2d 368, 377 (D. Conn. 2006) (vacating, under Rule 60(b), entry of default judgment where the plaintiff "failed to effect proper service of process"); *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 378 (S.D.N.Y. 1998) (granting motion to vacate default judgement where the plaintiff "failed to effect proper service of process"). Thus, Rule 60(b) is inapplicable and provides no basis for finding the Magistrate Judge's extension of the service deadline "void."

Further, the Federal Rules of Civil Procedure specifically authorize courts to extend service deadlines—both sua sponte and upon a plaintiff's request and showing of good cause:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant *or order that service be made within a specified time*. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added). *See also Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007) (affirming district court's denial of a request for a discretionary extension, but noting that "it is clear under the second clause of Rule 4(m) that an extension is always warranted upon a showing of 'good cause,' because the rule commands that an 'appropriate' extension 'shall' be granted upon such a showing" and that "a district court *may* grant an extension in the absence of good cause"); *Park Plus, Inc. v. Ardeon Realty Corp.*, No. 13-cv-6917, 2014 WL 338543, at *2, 2014 U.S. Dist. LEXIS 11791, at *4 (S.D.N.Y. Jan. 28, 2014) ("Rule 4(m) mandates that the Court extend the time for service on a showing of good cause, while a failure to show cause allows the Court to do so at its discretion").

Here, Defendant argues that because Plaintiff did not demonstrate "good cause" for failing to timely serve Defendant, the Magistrate Judge's extension of the service deadline was

unwarranted. (Dkt. No. 17-3, at 12, 14–16 (arguing that "[a] plaintiff may only obtain an extension of time to serve the summons and complaint if that plaintiff demonstrates good cause for their failure to serve"). However, as stated above, "Rule 4(m) permits a district court to enlarge the time for service 'even if there is no good cause shown.'" *Park Plus, Inc.*, 2014 WL 338543, at *2, 2014 U.S. Dist. LEXIS 11791, at *4 (quoting *Henderson v. United States*, 517 U.S. 654, 658 (1996)). Defendant's argument is therefore unavailing.

Finally, Defendant contends that because the Magistrate Judge failed to conduct a "weighing of the prejudices on the record," which would have, if conducted, favored dismissal, the extension of the service deadline was erroneous, and this case must be dismissed. (Dkt. No. 19, at 4–6). The Court disagrees.

> Courts in this Circuit generally base discretionary extensions of time to effect service on an assessment of four factors: "(1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and [4] whether defendant would be prejudiced by extending plaintiff's time for service."

*Park Plus, Inc.*, 2014 WL 338543, at *2, 2014 U.S. Dist. LEXIS 11791, at *5 (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013)). Here, Defendant asserts it was prejudiced by the extension because it caused Defendant to lose "the benefit of the statute of limitations," which would have "cut Defendant's potential liability in half if the deadlines for service were properly upheld and applied." (Dkt. No. 19, at 6–7). Defendant reverses the nature of the consideration regarding the first factor: when, given the time that has elapsed between the original service deadline, the statute of limitations would bar the refiling of a complaint, and an extension would allow such a complaint to proceed, the first factor weighs in *favor* of, not against, granting an extension. *See, e.g.*, *Park Plus, Inc.*, 2014 WL 338543, at *2–3, 2014 U.S.

Dist. LEXIS 11791, at *5–6 (finding first factor weighed in favor of discretionary extension of service time where, in the absence of an extension, "the statute of limitations would bar Plaintiff from recovering at least some portion of the damages it claims"). At the time the Magistrate Judge granted the extension, Plaintiff represented that Defendant had notice of the summons and complaint but because the process server had been unable to provide an affidavit of service, he "decided to reserve the defendant and file an affidavit of service . . . within the next two weeks." (Dkt. No. 9).[3] But even assuming Defendant did not have notice of the substance of the Complaint, and that the second factor weighs in Defendant's favor, because the third factor is inapplicable here, and the relatively short extension in service time ensured there was little, if any prejudice to Defendant in the delay—indeed, Defendant identifies none—the fourth factor weighs in Plaintiff's favor. *Cf. Vaher*, 916 F. Supp. 2d at 421 (finding prejudice when "the delay . . . was unusually lengthy and unreasonably prolonged"). Thus, because, on balance, two of the three applicable factors weigh in Plaintiff's favor, the Court finds no basis on which to question the Magistrate Judge's exercise of her discretion to order that service be made by July 23, 2021 and declines to vacate the Magistrate Judge's July 6, 2021 order.

### C.    Rule 12(b)(5)

Defendant next argues that Plaintiff failed to properly serve the summons and complaint. (Dkt. No. 17-3, at 10–12). According to the Magistrate Judge's July 6, 2021 order, the deadline to complete service of process was July 23, 2021.[4] (Dkt. No. 10). Defendant argues that 1) when

---

[3] Defendant asserts that Plaintiff's counsel "misled himself" and misinterpreted an email from Defendant's insurance company when he represented to the Court on July 2, 2021, that he understood that Defendant had been served with a summons and complaint, (Dkt. No. 19, at 6; *see also* Dkt. No. 11-2, at 3–4 (email); Dkt. No. 9 (July 2, 2021 letter to the Court)). Given Plaintiff's counsel's representation to the Court, in the same letter, that the process server did not have an affidavit of service, and that Plaintiff had "decided to reserve [sic] the defendant" (Dkt. No. 9), Defendant's assertion reveals nothing untoward in the conduct of Plaintiff's counsel.

[4] Because the Court declines to vacate the Magistrate Judge's July 6, 2021 order, it need not consider the party's arguments as to whether Plaintiff failed to meet deadlines prior to the Magistrate Judge's extension.

a process server attempted to serve Jeremy Nickels on July 21, 2021, the server only provided a

"Process Instruction Form," and no copy of the complaint, and 2) Plaintiff has provided no

evidence of compliance with the requirements under Georgia state law for service upon the

Secretary of State. (Dkt. No. 17-3, at 11–12). The parties dispute whether the July 21, 2021

personal service on Defendant was complete, (*id.* at 11; Dkt. No. 18, at 11), and the evidence in

the record is contradictory, (*compare* Dkt. No. 13 (Proof of Service of Summons and Declaration

Regarding Diligence, indicating that Jeremy "Nichols" was served with the summons and

complaint on July 21, 2021); *with* Dkt. No. 17-1, at 2 (affidavit of Jeremy Nickels, claiming that

on July 21, 2021 the process server only presented him with a "Process Instruction Form," and

no copy of the complaint, and he thus refused service)). Nonetheless, as Plaintiff's service on the

Georgia Secretary of State was proper, as discussed below, the Defendant's motion to dismiss

under Rule 12(b)(5) is denied.

"Before a federal court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v.

Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Absent consent, this means there must be

authorization for service of summons on the defendant." *Id.* A court "must look to matters

outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N.

Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "When a defendant raises a Rule

12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of

proving its adequacy.'" *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y.

2003) (quoting *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002)). A plaintiff

must "through specific factual allegations and any supporting materials, make a prima facie

showing that service was proper." *Kwon v. Yun*, No. 05-cv-1142, 2006 WL 416375, at *2, 2006 U.S. Dist. LEXIS 7386, at *6 (S.D.N.Y. Feb. 21, 2006).

Rule 4 provides that service of a summons and complaint may be effected by: (1) delivering process to the individual defendant personally; (2) leaving process at the individual defendant's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering process to an authorized agent of the defendant, whether the defendant be an individual, corporation, partnership, or association. *See* Fed. R. Civ. P. 4(e)(2), (h)(1)(B). Alternatively, Rule 4 permits service to be effected by "following state law for serving a summons in an action . . . in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(h)(1)(A) (cross-referencing Rule 4(e)(1) for service on a corporation, partnership, or association).

Under Georgia law,[5] service on a corporation is generally completed by personal service of the summons and complaint to an officer or agent of the corporation. Ga. Code Ann. § 9-11-4(e)(1)(A). "[W]hen for any reason service cannot be had in such manner, the Secretary of State shall be an agent of such corporation . . . upon whom any process, notice, or demand may be served." *Id.* "Thus, under Georgia law, 'substituted service upon the Secretary of State is proper *only* after a plaintiff has attempted to serve the persons listed in the statute and 'for any reason' that attempt is unsuccessful.'" *Davis v. Frederick J. Hanna & Assoc., P.C.*, 506 F. Supp. 2d 1322, 1323 (N.D. Ga. 2007) (citing *Stone Exch., Inc. v. Surface Tech. Corp.*, 605 S.E.2d 404, 405 (Ga. Ct. App. 2004) (emphasis in original)). To serve the Georgia Secretary of State:

> The plaintiff or the plaintiff's attorney shall certify in writing to the Secretary of State that he or she has forwarded by registered mail . . . . such process, service, or demand to the last registered office or

---

[5] The parties do not dispute that Defendant is a "Georgia Corporation with its headquarters in Marietta, Georgia." (Dkt. No. 1, ¶ 8).

agent listed on the records of the Secretary of State, that service cannot be effected at such office, and that it therefore appears that the corporation has failed either to maintain a registered office or to appoint a registered agent in this state. Further, if it appears from such certification that there is a last known address of a known officer of such corporation or foreign corporation outside this state, the plaintiff shall, in addition to and after such service upon the Secretary of State, mail or cause to be mailed to the known officer at the address by registered or certified mail or statutory overnight delivery a copy of the summons and a copy of the complaint. Any such service by certification to the Secretary of State shall be answerable not more than 30 days from the date the Secretary of State receives such certification.

Ga. Code Ann. § 9-11-4(e)(1)(A).

Defendant argues that Plaintiff did not, "[p]rior to serving the Georgia Secretary of State," forward such service "by registered mail or statutory overnight delivery" to Defendant and failed to provide evidence of compliance with the requirements Georgia state law for service on the Secretary of State. (Dkt. No. 17-3, at 11–12). In his response to Defendant's motion, Plaintiff attached a copy of the service request packet he sent to the Georgia Secretary of State, (Dkt. No. 18-6, at 3–23), along with the Secretary's Certificate of Acknowledgment dated July 23, 2021, (*id.* at 2; *see also* Dkt. No. 11-3, at 4 ("Proof of Service" form signed by a process server attesting that she served the summons on the Georgia Secretary of State on July 20, 2021)). The documents filed with the Georgia Secretary of State include a declaration by Plaintiff's counsel stating that "[t]hree attempts were made to serve Evol's agent" in Marietta, Georgia, but that those efforts "were unsuccessful"[6] and that "[c]oncurrently, with the filing of this request for service, my office sent Evol . . . a copy of the complaint and summons, via registered mail." (Dkt. No. 18-6, at 4). The Court finds that Plaintiff has made an adequate prima

---

[6] According to the "Declaration of Due Diligence," Plaintiff's process server attempted personal service on June 23, 2021 and June 24, 2021, at Evol, but found the "[b]usiness closed," "[t]he door was locked" and there did not appear to be "anyone inside the office." (Dkt. No. 11-3, at 2).

facie showing that he properly served Defendant through service on the Georgia Secretary of State.

Defendant appears to argue, without supporting case law, that Plaintiff was required to send a copy of the complaint and summons by mail *prior* to serving the Secretary. (Dkt. No. 17-3, at 11). However, Plaintiff's counsel stated in the Certification of Service sent to the Secretary that the summons and complaint were sent via registered mail concurrently with service on the Secretary. (Dkt. No. 18-6, at 4). And as the statute only requires that "[t]he plaintiff or the plaintiff's attorney shall certify in writing to the Secretary of State that he or she has forwarded by registered mail or statutory overnight delivery such process, service, or demand to the last registered office or registered agent listed on the records of the Secretary of State," the Court finds no basis for concluding Plaintiff failed to comply with the statute. Ga. Code Ann. § 9-11-4(e)(1). Defendant also argues that "[s]ervice is not complete and is not 'answerable' until '30 days from the date the Secretary of State receives such certification.'" (Dkt. No. 17-3, at 12) (citing Ga. Code Ann. § 9-11-4(e)(1)). However, the statute only provides that "[a]ny such service by certification to the Secretary of State shall be answerable not more than 30 days from the date the Secretary of State receives such certification," but does not indicate that service is not "complete" until that time. Ga. Code Ann. § 9-11-4(e)(1).

As Plaintiff has shown that he properly served Defendant with the summons and complaint pursuant to Rule 4(h)(1)(B) and in compliance with Georgia law prior to the July 23, 2021 extended deadline, the Court declines to dismiss this action under Rule 12(b)(5) and need not consider Defendant's additional argument regarding service of process.

IV.     **MOTION TO DISMISS—Fed. R. Civ. P. 12(b)(6)**

A.     **Standard of Review**

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (*citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d at 98)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B.     **"Induced-Purchase Theory of Injury"**

Defendant argues that Plaintiff has failed to state a claim under NYGBL § 349 because Plaintiff's damages are "based on an overpayment theory, whereby he would not have purchased the product had it not been mislabeled." (Dkt. No. 17-3, at 19). Because a plaintiff must allege actual harm to recover under Section 349, Defendant argues, and because "the complaint does not seek any other form of damages, Plaintiff has not alleged any injury sufficient to state a claim under [NYGBL] § 349 and, therefore, the complaint must be dismissed." (*Id.* at 20, 21). Plaintiff responds that Defendant "mischaracterizes the injury alleged," as the Complaint alleges "two

potential measures of damages" based on a complete refund model and that consumers would have paid less for the Products. (Dkt. No. 18, at 19–20).

NYGBL § 349 provides protection to consumers from "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Tomassini v. FCA US LLC*, No. 14-cv-1226, 2016 WL 11707888, at *3–4, 2016 U.S. Dist. LEXIS 202635, at *11 (N.D.N.Y. Nov. 23, 2016) (citing NYGBL § 349(a)). "The law is a broad, remedial statute designed to address 'the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York] State.'" *Id.* (citing *Braynina v. TJX Cos.*, No. 15-cv-5897, 2016 WL 5374134, *4, 2016 U.S. Dist. LEXIS 131562, at *11 (S.D.N.Y. Sept. 26, 2016)). There are three requirements for a claim under the NYGBL: 1) the challenged act or practice was consumer-oriented; 2) the act was misleading in a material way; and 3) the plaintiff suffered injury as a result of the challenged act. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).

"To plead an injury pursuant to either §§ 349 or 350, 'a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). "[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices [,] have not suffered an injury under [NYGBL] § 349." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (internal quotations and annotations omitted) (quoting *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012)). "Instead, a plaintiff must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use

16

of the product adversely affected plaintiff's health." *Colpitts*, 527 F. Supp. 3d at 576 (citing

*Preira*, 885 F. Supp. 2d at 677); *see also Stutman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y.

2000) ("[A] plaintiff must prove 'actual' injury to recover under the statute, though not

necessarily pecuniary harm").

Plaintiff alleges that he and other class members "suffered from a number of side effects

related to the Phenibut, in combination with the other ingredients, in the Products." (Dkt. No. 1,

¶ 4). Specifically, after consuming the Products, he experienced "dizziness, nausea, or fatigue for

over twelve hours," and, because of these side effects, he could not finish the remaining Product.

(*Id.* ¶ 7). Furthermore, "Plaintiff and other consumers of the Products report feeling uneas[iness],

nausea, and other hangover like symptoms for up to twenty-four hours after using the Products."

(*Id.* ¶ 22). Thus, Plaintiff adequately alleges that he and class members suffered adverse health

effects as a result of Defendant's deceptive acts, which is sufficient to allege injury under Section

349. *See Colpitts*, 527 F. Supp. 3d at 576.[7]

## C.     Deceptiveness

Defendant argues that Plaintiff has failed to allege that the marketing of the Products is

"inherently deceptive" as required under NYGBL § 349, because Plaintiff relies on Defendant's

alleged violations of the FDCA and the FDA's warning letter. (Dkt. No. 17-3, at 15). Plaintiff

responds that his claims "are only tangentially related to the FDCA violation" detailed in the

warning letter, and that Plaintiff is not attempting private enforcement of the FDCA, which was

not meant to displace all state law claims regarding food labeling. (Dkt. No. 18, at 16–17).

---

[7] Plaintiff also alleges that he and other class members "would have paid less" for the Products had they known "the[ir] true nature." (Dkt. No. 1, ¶ 4). Because the Court finds that injury was sufficiently alleged through adverse health effects, it need not decide whether Plaintiff adequately alleged injury from a price premium.

The FDCA does not provide a private cause of action, and "[t]hat 'gap' is not filled by the NYGBL." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 683 (S.D.N.Y. 2021) (citing *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 805 (S.D.N.Y. 2021)). To state a claim under the NYGBL, "the challenged act must be 'inherently deceptive,' and 'such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement.'" *Id.* (first citing *Barreto*, 518 F. Supp. 3d at 805; and then citing *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 127–28 (2d Cir. 2017)). However, "[an NY]GBL claim is viable where the plaintiff 'makes a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim' under another statute that is not independently actionable." *Barreto*, 518 F. Supp. 3d at 805–06 (citing *Nick's Garage*, 875 F.3d at 127–28). It is well-settled that without an allegation of deception, an act that violates "another statute which does not allow for private enforcement," is insufficient to state a claim under NYGBL § 349. *Nick's Garage*, 875 F.3d at 127; *see also Barreto*, 518 F. Supp. 3d at 805 (granting motion to dismiss, explaining that "the conduct alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under GBL §§ 349–50").

Plaintiff's complaint includes a number allegations regarding Defendant's violations of the FDCA. (Dkt. No. 1, ¶ 14 ("The FDA warned Defendant that [the] Products were misbranded."), ¶ 20 ("Phenibut is not recognized as GRAS and, therefore, it requires premarket approval. Defendant has not sought such approval. The Products are misbranded under federal and New York State law."), ¶ 21 ("Because Defendant's Products have not been approved by the FDA, they are misbranded and/or adulterated and may not be sold in the United States."), ¶ 27 ("Consumers have suffered and will continue to suffer substantial injury as a result of

Defendant's violations of the FDCA.")). Insofar as Plaintiff attempts to state a claim under the FDCA, such cause of action is dismissed. *See Budhani*, 527 F. Supp. 3d at 683 ("[T]o the extent Plaintiff purports to bring a separate claim based on the federal labeling standards, that claim is dismissed.").

However, Plaintiff also alleges that the Products contain Phenibut, which can cause side effects and dependence, (Dkt. No. 1, ¶ 11), that people who stop taking Phenibut may experience withdrawal symptoms, (*id.* ¶ 12), and that Defendant nevertheless markets the Products without disclosure of these dangers or the fact that Phenibut is not approved in the United States, (*id.* ¶ 13). Plaintiff alleges that "[a] reasonable consumer would believe that an energy drink, including the Products, would not have unreasonably dangerous or addictive ingredients," and therefore "the omission of warnings regarding such ingredients would be deceptive and misleading to the reasonable consumer." (*Id.* ¶ 24). The question is thus whether these allegations give rise to a "free-standing" claim for deceptiveness under NYGBL § 349.

To state a claim under NYGBL § 349, a plaintiff must allege that a defendant's act was misleading in a material way. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). "[A] material claim is one that 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Tomassini*, 2016 WL 11707888, at *7, 2016 U.S. Dist. LEXIS 202635, at *14 (first citing *Lebowitz v. Dow Jones & Co.*, 847 F. Supp. 599, 605 (S.D.N.Y. 2012); and then citing *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004)). An omission may form the basis of a claim under NYGBL § 349. *Chiarelli v. Nissan N. Am., Inc.*, No. 14-cv-4327, 2015 WL 5686507, at *11–12, 2015 U.S. Dist. LEXIS 129416, at *33 (E.D.N.Y. Sept. 25, 2015). Section 349 does not "require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant

information specific to its situation," but a plaintiff may plausibly allege an omissions-based theory if "the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Id.*, 2015 WL 5686507, at *11–12, 2015 U.S. Dist. LEXIS 129416, at *33–34 (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)). "To state an omission claim, a plaintiff must plausibly allege that a (1) business alone possessed material information and (2) failed to provide that information to consumers." *Kommer v. Ford Motor Co.*, No. 17-cv-296, 2017 WL 3251598, at *4, 2017 U.S. Dist. LEXIS 118335, at *9 (N.D.N.Y. July 28, 2017) (first citing *Dixon v. Ford Motor Co.*, No. 14-cv-6135, 2015 WL 6437612, at *8, 2015 U.S. Dist. LEXIS 146263, at *23–24 (E.D.N.Y. Sept. 30, 2015); and then citing *Szymczak v. Nissan N. Am., Inc.*, No. 10-cv-7493, 2011 WL 7095432, at *16, 2011 U.S. Dist. LEXIS 153011, at *46 (S.D.N.Y. Dec. 16, 2011)). The NYGBL requires "either actual or constructive knowledge to state a claim based on omissions." *Leonard v. Abbott Labs., Inc.*, No. 10-cv-4676, 2012 WL 764199, at *24, 2012 U.S. Dist. LEXIS 30608, at *68 (E.D.N.Y. Mar. 5, 2012) (citing *Woods v. Maytag*, No. 10–cv–599, 2010 WL 4314313, at *15, 2010 U.S. Dist. LEXIS 116595, at *43 (E.D.N.Y. Nov. 2, 2010) ("As with fraud claims, when a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice.")).

According to the Complaint, Phenibut is listed on the Products as a dietary ingredient but Defendant omitted material information,[8] such as the facts that Phenibut can (1) cause adverse

---

[8] Insofar as the Complaint also alleges deception through an affirmative misrepresentation, in that "[by] marketing the Products as an energy drink and thereby comparing the risk to consumption of mild to moderate amounts of caffeine, a universally regarded safe sympathomimetic . . . reasonable consumers believed the product to be safe," (Dkt. No. 1, ¶ 23), there are not sufficient allegations to support this conclusory assertion. The only statement on the Products' labels regarding energy is the claim on the Red Dawn product: "EXTRA ENERGY!" (Dkt. No. 1, ¶ 9). The Sleep Walker product label contains no claims about energy, just "increase focus & elevate mood." (*Id.*). The Products are not labeled an "energy drink," but rather "dietary supplement[s]," and the labels make no comparison to caffeine or

side effects, including "dizziness, nausea, poor balance, fatigue, and feelings of electric shocks in the arms and legs," and in larger doses, "can cause trouble breathing and unconsciousness," (Dkt. No. 1, ¶ 2), and (2) "cause dependence" and cause individuals who regularly use Phenibut to experience withdrawal symptoms, including "decreased appetite, nausea, muscle aches, anxiety, agitation, trouble sleeping, and seizures, (*id.* ¶¶ 11–12). As these allegations allow a plausible inference that the Products were unsafe and addictive, the Complaint adequately alleges materiality. *See Tomassini*, 2016 WL 11707888, at *7, 2016 U.S. Dist. LEXIS 202635, at *14 ("Plaintiff has submitted evidence that the alleged defect was a matter of safety, quality, durability, and performance, and, accordingly, there is a genuine question of material fact raised on whether Defendant's practice was materially deceptive.").

The Complaint, however, fails to allege that information regarding Phenibut's health risks and addictive nature was exclusively in Defendant's possession, or even that Defendant had knowledge that the Product was causing health problems to consumers. *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011) (explaining that plaintiffs pursuing an omission-based claim must "plausibly allege[ ] that the . . . [d]efendants had knowledge of the [material information] and failed to disclose or actively concealed such information"). The warning letter from the FDA does not warn of the allegedly dangerous and addictive nature of Phenibut; it addresses its listing as a dietary ingredient: "[b]ecause phenibut does not fit in any of the dietary ingredient categories under [the FDCA, 21 U.S.C. § 321(ff)(1)], it is not a dietary ingredient as defined in the Act" and that "[d]eclaring phenibut in your product labeling as a dietary ingredient

---

caffeinated drinks or any claims regarding the safety of the Products. (*Id.*). Even if Plaintiff did plausibly plead that the Products were marketed as "energy drinks," there is no basis to conclude that such an assertion would be misleading. *See Barreto*, 518 F. Supp. 3d at 805 ("the conduct alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under GBL §§ 349–50"). In any event, Plaintiff has not challenged the truthfulness of this claim. The Court therefore considers only the crux of Plaintiff's allegations, which are based on an omission theory.

causes your products to be misbranded." (Dkt. No. 21, ¶ 20). This alleged violation of the
FDCA, without more, does not allow a plausible inference that Defendant possessed information
about Phenibut's dangerous and addictive nature. *See, e.g., Nick's Garage*, 875 F.3d at 127
(explaining that without an allegation of deception, an act that violates "another statute which
does not allow for private enforcement," is insufficient to state a claim under NYGBL § 349).
And although the Complaint alleges that "Plaintiff and other consumers of the Product *report*
feeling unwell . . . uneasy, nausea, and other hangover like symptoms for up to twenty-four hours
after using the Products," (Dkt. No. 1, ¶ 22 (emphasis added)), it does not allege that Plaintiff or
other consumers reported these feelings to *Defendant*. Indeed, the sole allegation regarding
Defendant's knowledge is vague and conclusory; it alleges that "Defendant knew or should have
known [of the potential serious dangers, or addictive nature of Phenibut that] might result from
consuming the Products." (Dkt. No. 1, ¶ 23). Absent from this allegation are "facts that, if true,
would render this contention plausible." *Leonard*, 2012 WL 764199, at *24, 2012 U.S. Dist.
LEXIS 30608, at *69; *see In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 356,
359 (S.D.N.Y. 2016) (dismissing § 349 omission-based claim that the defendant failed to inform
the plaintiffs "that advertisements would be displayed during use of the" Slingbox where the
"[p]laintiffs have failed to plead facts sufficient to lead to the reasonable inference that Sling
Media had knowledge of a plan to disseminate advertising at the time Plaintiffs purchased their
Slingbox Systems"); *cf. Szymczak*, 2011 WL 7095432, at *16, 2011 U.S. Dist. LEXIS 153011, at
*45 (denying motion to dismiss "omission-based claim" under NYGBL § 349 finding that the
"plaintiffs' allegations include sufficient detail and a plausible narrative for how defendants

knew of the radiator defect"). Accordingly, the Court concludes that Plaintiff fails to state a plausible claim for relief under NYGBL § 349.[9]

### D.   Leave to Amend

Plaintiff has requested leave to amend if the Court "finds the Complaint deficient in any way." (Dkt. No. 18, at 27). In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Plaintiff has not proffered any facts that would make its NYGBL claim plausible, because it is conceivable that Plaintiff may be able to cure the defects in this complaint with better pleading, the Court has provided Plaintiff with an opportunity to do so.

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 17) is **GRANTED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** without prejudice and with leave to amend; and it is further

**ORDERED** that any amended complaint must be filed by January 14, 2022; and it is further

**ORDERED** that the Court Clerk is directed to close this case if Plaintiff does not file an amended complaint by January 14, 2022.

**IT IS SO ORDERED.**

Dated: December 14, 2021
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[9] Because the Court finds that Plaintiff has failed to state a claim for relief under NYGBL § 349, it need not address Defendant's remaining argument that this action should be dismissed under the doctrine of primary jurisdiction. (Dkt. No. 17-3, at 21).